Navella CONSTANCE and Vernal
Constance, Plaintiffs,

v.

STATE UNIVERSITY OF NEW YORK
HEALTH SCIENCE CENTER AT
SYRACUSE Defendant.

No. 5:98CV1440FJSDEP.

United States District Court,
N.D. New York.

July 2, 2001.

Syracuse University College of Law—Office of Clinical Programs, Syracuse, NY (Paul F. Kelly, Robert E. Geyer, Jr., of counsel), National Association of the Deaf Law Center, Silver Spring, MD (Marc P. Charmatz,[1] of counsel), for plaintiffs.

Office of the Attorney General, Department of Law, Albany, NY (Charles J. Quackenbush, AAG, of counsel), for defendant.

Office of the United States Attorney, Syracuse, NY (William H. Pease, Ausa, of Counsel), amicus.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiffs, Vernal and Navella Constance, bring this action against Defendant State University of New York Health Science Center ("Hospital" or "SUNY HSC"), alleging that the Hospital failed to provide them with a sign language interpreter in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and § 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794.[2] They seek declaratory and injunctive relief along with damages.[3]

### II. BACKGROUND

Plaintiffs are husband and wife. Mrs. Constance was brought to Defendant's facility in Syracuse for emergency medical treatment on May 18, 1996. Mr. Constance remained by her side much of the

---

1. Admitted pro hac vice.

2. Title II of the ADA and § 504 of the Rehabilitation Act require that public entities and recipients of federal financial assistance ensure "effective communication" with persons who are hearing impaired. *See, e.g.,* 28 C.F.R. § 35.160.

3. Although the complaint included claims under the New York Human Rights Law, New York Hospital Codes, Rules and Regulations and state tort law, Plaintiffs have since withdrawn those claims.

time. According to Plaintiffs' complaint, they both informed hospital officials that they were deaf and needed an interpreter. No interpreter was provided.

The Hospital claims that it had, and still does have, in place a detailed written policy outlining how to provide hearing impaired patients equal and effective access to the Hospital. Pursuant to that policy, the Hospital informs the patient that, while friends or relatives are not expected to interpret, they may assist, on a voluntary basis, in emergency situations. If the patient desires a professional interpreter, as was the case here, the Hospital contacts an independent agency to obtain one.

In the instant case, the Hospital maintains that within thirty minutes of Plaintiffs' arrival social worker Mark Buttiglieri requested an interpreter from the Aurora agency to assist Plaintiffs in their communications with Hospital staff. *See* Affidavit of Mark Buttiglieri, sworn to June 12, 2000, at ¶ 6. While waiting for the interpreter to arrive, a respiratory therapist, Mary McCoy, with some finger spelling skills attempted to assist Plaintiffs. *See* Deposition of Mary McCoy, sworn to Jan. 25, 2000, at 6–8, 17. Ms. McCoy stopped assisting Plaintiffs when one of their friends, Reverend Nagel, arrived and proved to be more proficient at signing. *See id.* at 16. The Hospital asserts that Reverend Nagel served as an interpreter for Plaintiffs. Yet, Plaintiffs and the Reverend maintain that she never acted as an interpreter and merely assisted Mrs. Constance in a limited capacity.

Mrs. Constance was kept overnight for observation. In the morning, a physician examined her with the assistance of a hospital staff member named Tony, who was

taking sign language courses.[4] *See* Deposition of Navella Constance, sworn to Jan. 21, 2000 ("Navella Dep."), at 28.

Subsequent to Mrs. Constance's discharge on May 19, 1996, Plaintiffs filed an administrative complaint with the New York State Department of Health ("DOH"). This agency substantiated Plaintiffs' allegations and sent Defendant a statement of deficiencies for which a plan of correction had to be submitted.

On June 15, 1999, this Court denied Defendant's motion to dismiss, brought pursuant to Rule 12 of the Federal Rules of Civil Procedure. The Court allowed Plaintiffs thirty days to amend their complaint to allege that they are likely to seek medical services at the Hospital in the future. The Court also found that the complaint, on its face, stated a claim of intentional discrimination.[5] *See* Order, dated June 15, 1999, at 4–7.

Presently, before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court heard oral argument in support of, and in opposition to, this motion on March 16, 2001. At that time, the Court reserved decision. The following constitutes the Court's determination of Defendant's motion.

## III. DISCUSSION

### A. Standing to seek injunctive relief

▄▄▄ In order for a plaintiff to have standing to seek relief from a federal court, that plaintiff must satisfy three elements: (1) an injury in fact, (2) a causal connection between that injury and the conduct complained of, and (3) a likelihood, not a mere possibility, that the injury will be redressed only if the relief is granted.

---

4. Mrs. Constance claims that these communication were ineffective and did not enable her to communicate effectively with the medical staff. In fact, she saw one note that led her to

believe she had a heart attack. *See* Navella Dep. at 24–25.

5. The Court is now being asked to revisit this issue in light of discovery.

*See, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). When a plaintiff seeks injunctive relief she must "show more than 'past exposure to illegal conduct;' [she] must show a 'real and immediate threat of repeated injury.'" *Freydel v. New York Hosp.,* No. 97 CIV. 7926, 2000 WL 10264, *2 (S.D.N.Y. Jan.4, 2000) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal quotation omitted)). In short, a plaintiff must "allege a future encounter with the defendant which is likely to lead to a similar violation of some protected right." *Id.* (citing [*Lyons,* 461 U.S.] at 105–06, 103 S.Ct. 1660).

A recent case in the Southern District of New York presented issues similar to those currently before the Court. *See Freydel,* 2000 WL 10264. In that case, the court found that the plaintiff lacked standing to seek injunctive relief.[6] The plaintiff argued for standing based on the existence of a chronic condition and the fact that the defendant hospital was part of a medical network to which she belonged. The court found that this was not enough since "[o]ne visit to a hospital does not establish that [the plaintiff] is likely to again find herself seeking treatment at [the defendant hospi-

tal]." *Id.,* 2000 WL 10264, at * 3. The court determined that the plaintiff had failed to produce evidence of a likely future encounter. *See id.*

In *Freydel,* the court noted that the Southern District had previously held that a deaf patient who had visited a hospital four times in the past did not establish a likelihood of a future visit. *See id.* (citing *Naiman v. New York Univ.,* [No. 95 CIV. 6469, 1997 WL 249970, *5 (S.D.N.Y. May 13, 1997) ]). Other cases also seem to require a substantial showing before determining that future encounters are likely. In *Schroedel v. New York Univ. Med. Ctr.,* 885 F.Supp. 594 (S.D.N.Y.1995), the court found that since the defendant hospital was not the closest hospital to the plaintiff's home, the plaintiff had only sought treatment there on just one prior occasion, and had indeed used other medical facilities when the need arose, the plaintiff had failed to show a real and immediate threat of future injury.[7] *See id.* at 599.

In the instant case, Plaintiffs assert that there is a likelihood that they will return to SUNY HSC in the future.[8] *See* Navella Dep. at 24. Plaintiffs allege they travel to the Syracuse area several times a year and argue that it is likely Mrs. Constance may experience another emergency while in

6. When the parties submitted their motion papers to the Court, *Freydel* was still pending before the Second Circuit. Since that time, the Second Circuit has issued an unpublished opinion disposing of that case. *See Freydel v. New York Hosp.,* No. 00–7108, 2000 WL 1836755 (2d Cir. Dec.13, 2000). The Second Circuit, for reasons similar to those offered by the district court, found that the plaintiff lacked standing to seek injunctive relief. The court, while acknowledging that the plaintiff "may" be referred to the defendant hospital in the future, found that "such an indefinite speculation is insufficient to maintain standing to seek injunctive relief." *Id.,* 2000 WL 1836755, at * 6. The court focused on the fact that other hospitals were closer to the plain-

tiff's home and that she had no ties to the defendant hospital. *See id.*

7. The court dismissed the plaintiff's claim for injunctive relief with leave to amend to show that she faced a real and immediate threat of future injury. *See Schroedel,* 885 F.Supp. at 600.

8. In fact, Mrs. Constance still suffers from the same condition that caused her visit to the Hospital in May of 1996. Between 1962 and 1982, she suffered 20–30 fainting episodes and yet none of these brought her into contact with Defendant. Defendant maintains that to find a likelihood of a repeat visit to Defendant the Court would have to engage in speculation. To the contrary, the United States Government in an *amicus* brief argues that it is

Syracuse. *See id.* at 7. Plaintiffs also maintain that while Mrs. Constance's cancer treatment is over for the time being, her cancer may recur and, since Defendant Hospital is a cancer treatment center, it is likely she will elect to seek treatment at SUNY HSC. *See* Affidavit of Navella Constance, sworn to Nov. 17, 2000, at ¶ 12.

Plaintiffs' arguments are conclusory and do not have a factual basis. In the past, Mrs. Constance received treatment for cancer at a hospital in Watertown, New York. In fact, she has never utilized the services at Defendant Hospital prior to or since the incident giving rise to this action.[9] *See* Navella Dep. at 35–41. It would be speculative to assume that Mrs. Constance will again suffer a medical emergency while in Syracuse and would again be transported to SUNY HSC for treatment. Furthermore, in light of Mrs. Constance's choice to seek treatment for her cancer with her oncologist in Watertown, it is speculative to assume that should her cancer return she would decide to seek treatment at Defendant's facilities. In sum, Plaintiffs have at most shown a mere possibility of a return visit to Defendant Hospital, not a "likelihood." *See Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130.

Drawing all inferences in favor of Plaintiffs, the record does not support a finding that Plaintiffs are likely to seek treatment at the Hospital in the future. Plaintiffs have failed to demonstrate that they face a real and immediate threat of future injury and, therefore, they lack standing to pursue injunctive relief. Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiffs' claim for injunctive relief.[10]

## B. Plaintiffs' ADA and Rehabilitation Act claims

To establish a claim for damages under the ADA or the Rehabilitation Act a plaintiff must show that a defendant is guilty of intentionally discriminating. *See Freydel*, 2000 WL 10264, at *4 (citing *Bartlett v. New York Bd. of Law Examiners*, 156 F.3d 321 (2d Cir.1998), judgment vacated on other grounds and remanded, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790, 67 U.S.LW. 3528 (1999)). Intentional discrimination against the disabled does not require a showing of animosity or ill will but rather may be inferred when "a 'policymaker act[s] with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result....'" *Id.* (citing [*Bartlett*, 156 F.3d] at 331 (citations and internal quotation marks omitted)) (footnote omitted).

In the instant case, Defendant asserts that "[a]t worst, [P]laintiffs can demonstrate an inadvertent administrative lapse at SUNY HSC." *See* Def.'s Memorandum of Law at 21. This administrative lapse occurred when hospital staff failed to follow up with Aurora when the requested interpreter failed to appear. Defendant argues that it adhered to its policy when it made such a request and that its actions do not show deliberate indifference to Plaintiffs' condition.

Here too, the *Freydel* decision is instructive. In *Freydel*, the court found that the plaintiff had failed to establish that the defendant had acted with deliberate indifference to the likelihood of a violation of

---

extremely likely that Plaintiffs will seek future care at SUNY HSC.

**9.** Mr. Constance has had no occasion to receive treatment at the Hospital in the last twenty-five years. *See* Deposition of Vernal Constance, sworn to Feb. 4, 2000, at 23–24.

**10.** In light of the Court's conclusion, it need not consider whether Plaintiffs, if they ever returned to Defendant again, would suffer violations of their rights.

the plaintiff's rights. *See id.* The court focused on the fact that, in response to both of the plaintiff's requests, hospital staff attempted to secure interpreter services. *See id.* The court noted that "[a]lleging requests for translation services, even when repeated over several days, does not by itself suffice to maintain a claim of intentional discrimination. A plaintiff must also show that the institution remained deliberately indifferent to the likely violation of protected rights."[11] *Id.,* 2000 WL 10264, at *5 (citing *Bartlett,* 156 F.3d at 331).

In the instant case, however, Plaintiffs attempt to distinguish *Freydel.* They argue that "a mere attempt to obtain effective communication, by itself, does not necessarily negate a holding of discriminatory intent." *See* Pls.' Memorandum of Law at 24. They claim that the Court must look to the totality of the circumstances to determine whether Defendant acted with deliberate indifference. *See, e.g., Bravin v. Mount Sinai Med. Ctr.,* 58 F.Supp.2d 269, 274 (S.D.N.Y.1999). In this regard, Plaintiffs assert that discriminatory intent can be inferred from the fact that the Hospital did not follow up with Aurora when the requested interpreter failed to appear and further, that Defendant's deficient policy and its reluctance to make meaningful changes to that policy evince a discriminatory intent.[12]

However, the Court finds the facts of this case to be very similar to those in *Freydel.* As in *Freydel,* the Hospital very quickly responded to Plaintiffs' request for an interpreter. Although the Hospital may have been negligent for failing to follow up on that request, that failure does not amount to deliberate indifference to Plaintiffs' rights. In fact, the Hospital did attempt, albeit with disputed success, to have its employees assist Plaintiffs in their communications with medical staff. Accordingly, the Court grants Defendant's motion for summary judgment on the issue of damages.

## IV. CONCLUSION

After carefully reviewing the file, the parties' submissions and oral arguments and the relevant law, and for the reasons stated herein, it is hereby

**ORDERED** that Defendant's motion for summary judgment is **GRANTED;** and it is further

**ORDERED** that the Clerk of the Court enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

---

11. In contrast, the court in *Naiman* found that the plaintiff's allegation that he requested an interpreter along with the absence of any claim by the defendant that it had attempted to provide one sufficiently alleged intent to survive a motion to dismiss. *See Naiman,* 1997 WL 249970, at *5.

12. Plaintiffs claim that the policy does not explicitly state who is to make the call to request an interpreter and it fails to direct personnel as to what steps to take when a requested interpreter fails to arrive.